**IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT**

**IN AND FOR VOLUSIA COUNTY, FLORIDA**

**CIVIL DIVISION**

JENNIFER KRAVCHUCK, CASE NO.:

Plaintiff,

v.

SAMSUNG ELECTRONICS AMERICA, INC.,
a New York corporation, and T-MOBILE
USA, INC., a Delaware corporation,
individually and as successor in interest
to Sprint,

Defendants.
_________________________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JENNIFER KRAVCHUCK ("Plaintiff"), by and through undersigned counsel, sues Defendants SAMSUNG ELECTRONICS AMERICA, INC. ("SEA") and T-MOBILE USA, INC., individually and as successor in interest to Sprint ("T-Mobile") (collectively, "Defendants"), and alleges:

### JURISDICTION, PARTIES, AND VENUE

1. This is an action for damages in excess of Fifty Thousand Dollars ($50,000.00), exclusive of interest, costs, and attorney's fees, and for the recovery of specific personal property.

2. Plaintiff is a natural person over the age of eighteen, sui juris, who at all material times was and is a resident of and domiciled in Volusia County, Florida.

3. Defendant SEA is a corporation organized under the laws of the State of New York with its principal place of business in Ridgefield Park, New Jersey. SEA is authorized to do and does business in Florida, and its registered agent is C T Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324. At all material times SEA was the Samsung entity

responsible in the United States for the importation, marketing, distribution, and sale of Samsung-branded mobile devices, including the Galaxy S21 series, and for their warranty administration, post-sale safety monitoring, and the handling of consumer claims, and it conducted those activities in Florida.

4. Defendant T-Mobile is a corporation organized under the laws of the State of Delaware with its principal place of business in Bellevue, Washington. T-Mobile is authorized to do and does business in Florida, and its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301. T-Mobile is sued individually and as successor in interest to Sprint Corporation and its operating subsidiaries, including Sprint Solutions, Inc. (collectively, "Sprint"), whose wireless business, retail operations, dealer network, and liabilities T-Mobile acquired and assumed following the merger completed on or about April 1, 2020.

5. On March 10, 2022, the retail location at 305 E. International Speedway Blvd., Suite 9, DeLand, Florida 32724 (the "DeLand Store") operated under T-Mobile's signage "Sprint now part of T-Mobile" and was operated either by T-Mobile directly or by an authorized dealer of T-Mobile acting under a dealer agreement with T-Mobile, whose identity is within T-Mobile's knowledge. Plaintiff reserves the right to amend to join the operator of the DeLand Store as an additional defendant once its identity is disclosed.

6. This Court has personal jurisdiction over each Defendant pursuant to section 48.193, Florida Statutes, because each Defendant operates, conducts, engages in, or carries on a business or business venture in Florida; the Subject Device was sold to Plaintiff in Florida; the injury occurred in Florida; and each Defendant is registered to do business in Florida and maintains a registered agent here.

7. Venue is proper in Volusia County, Florida, pursuant to sections 47.011 and 47.051, Florida Statutes, because the causes of action accrued in Volusia County, where the Subject Device was sold to Plaintiff and where Plaintiff was injured.

## GENERAL ALLEGATIONS

### A. The Subject Device and Its Sale

8. On March 10, 2022, Plaintiff purchased for her personal use, for consideration, new and in its original sealed manufacturer's packaging, a Samsung Galaxy S21 5G smartphone, Model No. SM-G991U (carrier variant SM-G991UZAATMB), IMEI 350336269138479, Serial No. R5CRC1XZ53Y (the "Subject Device"), at the DeLand Store, which then operated under the trade name "Sprint now part of T-Mobile."

9. The Subject Device was designed, manufactured, assembled, tested, labeled, packaged, and warranted by Samsung Electronics Co., Ltd., SEA, and their affiliates (collectively, "Samsung"), and was imported into, marketed, distributed, and sold in the United States by SEA, which placed the Subject Device into the stream of commerce with the expectation that it would reach consumers in Florida without inspection for defects.

10. The Subject Device was equipped with an integrated, sealed, non-user-replaceable lithium-ion battery, Samsung part number EB-BG991ABY, nominal capacity 4,000 mAh, manufactured by a cell supplier selected by Samsung, together with a battery management system, protection circuitry, charging circuitry, and thermal management components (collectively, the "Battery System"), all of which were designed and specified by Samsung and installed at the factory.

11. Model SM-G991UZAATMB is a variant of the Galaxy S21 5G manufactured and configured specifically for sale and activation through T-Mobile's wireless network and retail channels. SEA sold and distributed the Subject Device to T-Mobile, or to T-Mobile's authorized dealer, for resale to consumers.

12. T-Mobile, directly or through its authorized dealer, sold the Subject Device to Plaintiff in the ordinary course of its business of selling mobile devices, and Plaintiff activated the Subject Device on T-Mobile's network. T-Mobile is a "seller" and a link in the chain of distribution of the Subject Device.

13. The Subject Device reached Plaintiff without substantial change in the condition in which it was sold by SEA. Neither T-Mobile nor its dealer opened the sealed housing, modified the Subject Device, or inspected its Battery System before the sale to Plaintiff.

14. The Subject Device was designed, marketed, and intended to be carried on the user's person, in a pocket, in a bed, or otherwise in close and prolonged contact with the user's body, and Samsung and T-Mobile knew that consumers would use it in that manner. Samsung has acknowledged in its own published safety materials that contact with an overheating device can cause burns to the skin.

### B. The Thermal Runaway Event of March 21, 2024

15. From the date of purchase through March 21, 2024, Plaintiff used the Subject Device in a normal and reasonably foreseeable manner, with its original battery, and did not open, modify, repair, or tamper with the Subject Device or its Battery System.

16. On or about March 21, 2024, in Volusia County, Florida, while the Subject Device was in contact with Plaintiff's body in the course of ordinary use, the Battery System of the Subject Device, suddenly and without warning, entered thermal runaway and generated extreme heat.

17. The heat generated by the Subject Device burned the skin on the left side of Plaintiff's lower torso (her left flank). Plaintiff sought emergency treatment the same day at AdventHealth DeLand, where she was treated for a burn injury.

18. Plaintiff's burn has healed with a permanent and disfiguring scar. Plaintiff has incurred medical expenses and may require further treatment.

### C. Samsung Takes Possession of the Subject Device and Keeps It

19. Plaintiff reported the incident and her injury to SEA. On or about November 15, 2024, SEA, through its "Specialty Claims Assessment" unit (Ticket No. 3102043964), advised Plaintiff in writing that it would send her a shipping box for the Subject Device, instructed her "DO NOT factory reset the unit" so that "the device can be tested properly," and requested Plaintiff's medical documentation of her injury.

20. SEA supplied Plaintiff with a prepaid UPS Ground shipping label addressed to "EVALUATION CSD, 6625 Excellence Way, Plano, TX 75023" and with a hazardous-materials shipping package bearing the UN3481 lithium-ion battery mark, the legend "DAMAGED/DEFECTIVE LITHIUM ION BATTERY(S) — FORBIDDEN FOR TRANSPORT BY AIRCRAFT — GROUND AND CARGO VESSEL SHIPMENT ONLY," and a printed statement that the package is a special-permit package (DOT-SP 20432) "for return shipment of one (1) damaged, defective or recalled mobile phone" incorporating technology "for thermal runaway mitigation." On or about November 22, 2024, in compliance with SEA's instructions, Plaintiff shipped the Subject Device to SEA at that address, in that package, together with her hospital report and photographs of her injury. SEA received the Subject Device.

21. On or about November 27, 2024, SEA confirmed in writing that it would "proceed with full evaluation of unit by our engineer team" and would review the medical documentation Plaintiff had submitted.

22. On or about December 4, 2024, SEA offered to pay Plaintiff $799.99, which it characterized as a "refund" for the Subject Device, on the condition that she execute a document releasing all claims against Samsung. SEA did not offer to return the Subject Device. On or about January 15, 2025, Plaintiff declined in writing to execute that document.

23. Thereafter, while Plaintiff was communicating directly with SEA's claims personnel, Plaintiff requested in writing that SEA return the Subject Device to her, stating, among other things, "I just need my cell phone back," and that the device contained her personal medical records. SEA did not return the Subject Device.

24. On March 21, 2025, Plaintiff's counsel served SEA with a written notice of representation and a formal notice to preserve the Subject Device, its Battery System, all data stored on or extracted from it, and all records of its custody, handling, testing, and evaluation.

25. SEA has never returned the Subject Device to Plaintiff, has never offered to return it, and has never informed Plaintiff of its present location or condition.

26. SEA has had exclusive possession, custody, and control of the Subject Device since on or about November 22, 2024. The Subject Device is Plaintiff's personal property; it is the

primary physical evidence of the defect alleged in this action; and it contains Plaintiff's personal data. SEA has no right to retain it.

27. All conditions precedent to the filing of this action have occurred, have been performed, or have been waived.

**COUNT I — STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**

**Against Samsung Electronics America, Inc.**

28. Plaintiff realleges and incorporates paragraphs 1 through 27 as if fully set forth herein.

29. SEA imported, marketed, distributed, and sold the Subject Device in the ordinary course of its business and placed it into the stream of commerce, and is therefore strictly liable for injuries caused by defects in the Subject Device that existed when it left SEA's control.

30. The Subject Device was defective in its design and unreasonably dangerous when it left SEA's control, in that its Battery System was susceptible to internal short circuit, cell swelling, and thermal runaway during normal and foreseeable use, generating temperatures sufficient to burn the skin of a user carrying the device against the body, and in that the Battery System lacked adequate protection to detect, limit, isolate, or interrupt such a thermal event before it could injure the user.

31. The Subject Device failed to perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner. An ordinary consumer does not expect a smartphone carried against the body to reach a temperature capable of burning skin.

32. The Subject Device reached Plaintiff without substantial change in the condition in which it was sold.

33. The design defect in the Subject Device was a direct and proximate cause of the thermal runaway event of March 21, 2024, and of Plaintiff's injuries.

34. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Device, Plaintiff has suffered in the past, and will suffer in the future, damages that are permanent or continuing in nature, including bodily injury and resulting pain and

suffering, disability, disfigurement (including a permanent scar), mental anguish, inconvenience, loss of capacity for the enjoyment of life, and the expense of hospitalization and medical care and treatment.

WHEREFORE, Plaintiff, JENNIFER KRAVCHUCK, demands judgment against Defendant SAMSUNG ELECTRONICS AMERICA, INC. for compensatory damages, taxable costs, interest as allowed by law, and such other relief as the Court deems just and proper, and demands trial by jury of all issues so triable.

**COUNT II — STRICT PRODUCTS LIABILITY (MANUFACTURING DEFECT)**

**Against Samsung Electronics America, Inc.**

35. Plaintiff realleges and incorporates paragraphs 1 through 27 as if fully set forth herein.

36. SEA imported, marketed, distributed, and sold the Subject Device in the ordinary course of its business and placed it into the stream of commerce, and is therefore strictly liable for injuries caused by defects in the Subject Device that existed when it left SEA's control.

37. The Subject Device, and specifically its Battery System, was defective in its manufacture and unreasonably dangerous when it left SEA's control, in that it differed from its intended design and failed to perform as safely as the intended design would have performed: a lithium-ion cell manufactured and assembled according to Samsung's specifications does not enter thermal runaway during normal use, and the cell installed in the Subject Device did.

38. The Subject Device malfunctioned during normal operation, under conditions of ordinary use, and without any abnormal use, alteration, or external cause attributable to Plaintiff. The malfunction itself is evidence that the Subject Device was defective at the time of the incident and at the time it left SEA's control.

39. The particular manufacturing defect is presently within the knowledge of SEA, which has held the Subject Device in its exclusive possession since November 22, 2024, and which has stated that it has evaluated the Subject Device through its engineering personnel.

40. The Subject Device reached Plaintiff without substantial change in the condition in which it was sold.

41. The manufacturing defect in the Subject Device was a direct and proximate cause of the thermal runaway event of March 21, 2024, and of Plaintiff's injuries.

42. As a direct and proximate result of the defective and unreasonably dangerous condition of the Subject Device, Plaintiff has suffered in the past, and will suffer in the future, damages that are permanent or continuing in nature, including bodily injury and resulting pain and suffering, disability, disfigurement (including a permanent scar), mental anguish, inconvenience, loss of capacity for the enjoyment of life, and the expense of hospitalization and medical care and treatment.

WHEREFORE, Plaintiff, JENNIFER KRAVCHUCK, demands judgment against Defendant SAMSUNG ELECTRONICS AMERICA, INC. for compensatory damages, taxable costs, interest as allowed by law, and such other relief as the Court deems just and proper, and demands trial by jury of all issues so triable.

**COUNT III — STRICT PRODUCTS LIABILITY**

**(FAILURE TO WARN AND INSTRUCT)**

**Against Samsung Electronics America, Inc.**

43. Plaintiff realleges and incorporates paragraphs 1 through 27 as if fully set forth herein.

44. At the time the Subject Device left SEA's control, Samsung knew, or in light of the scientific and engineering knowledge generally available should have known, that sealed lithium-ion batteries integrated into smartphones can undergo thermal runaway during normal use, including while the device is idle or charging beside or against a sleeping user, and generate heat sufficient to cause serious burns, and that this risk is neither obvious to nor appreciated by an ordinary consumer.

45. Samsung knew that a substantial proportion of consumers keep their smartphone in or beside the bed overnight, charge it overnight, and sleep in contact with it. Samsung designs and

markets its Galaxy devices for that use: it equips its phones with bedtime and sleep features, and it markets lithium-ion-powered wearable devices to be worn against the body throughout the night. Overnight contact between a Galaxy device and the user's body is a use Samsung intended, invited, and expected.

46. SEA had a duty to provide warnings and instructions that were adequate in content, in intensity, and in placement — that is, warnings that made apparent the nature and severity of the harm (serious burns), that were of an intensity commensurate with that danger, and that were placed where an ordinary consumer would encounter them (on the device, on the exterior of its packaging, or on its screen during setup) rather than only within a multi-page printed insert.

47. The Subject Device, its packaging exterior, and its on-device setup screens and notifications contained no warning or instruction that the device could overheat and burn the user's skin, no instruction not to sleep on or beside the device or to place it under bedding or against the body, and no instruction concerning the signs of battery deterioration (swelling, unusual heat) that may precede a thermal event. To the extent any printed insert accompanying the Subject Device referred to covering the device or to air flow, that statement was framed as a matter of device performance, did not disclose the risk of burn injury to a sleeping user, and was not placed, worded, or emphasized in a manner commensurate with that risk.

48. A plain-language warning and instruction of the kind described above was feasible, inexpensive, and known in the industry; other manufacturers of comparable devices provide an explicit instruction not to sleep on a device or place it under a blanket, pillow, or the body while it is connected to power.

49. Adequate warnings and instructions could have been provided by means available to Samsung when the Subject Device was sold, including a permanent marking on the exterior of the device; a warning on the exterior of the retail packaging; a plain-language safety message displayed on the screen during initial setup, when charging begins, and when the user enables the device's bedtime or sleep features; and an in-box safety card using the signal word, pictogram, and hazard statement conventions of ANSI Z535.4. Samsung did not employ any of these means.

50. The Subject Device was therefore defective and unreasonably dangerous when it left SEA's control because the foreseeable risk of harm could have been reduced or avoided by

reasonable instructions or warnings, and the failure to provide them rendered the device unreasonably dangerous.

51. Had an adequate warning and instruction been provided, Plaintiff would have heeded it and would not have kept the Subject Device against her body in the manner that resulted in her injury.

52. SEA's failure to warn and instruct was a direct and proximate cause of Plaintiff's injuries.

53. As a direct and proximate result of SEA's failure to warn and instruct, Plaintiff has suffered in the past, and will suffer in the future, damages that are permanent or continuing in nature, including bodily injury and resulting pain and suffering, disability, disfigurement (including a permanent scar), mental anguish, inconvenience, loss of capacity for the enjoyment of life, and the expense of hospitalization and medical care and treatment.

WHEREFORE, Plaintiff, JENNIFER KRAVCHUCK, demands judgment against Defendant SAMSUNG ELECTRONICS AMERICA, INC. for compensatory damages, taxable costs, interest as allowed by law, and such other relief as the Court deems just and proper, and demands trial by jury of all issues so triable.

**COUNT IV — STRICT PRODUCTS LIABILITY**

**(COMMERCIAL SELLER AND DISTRIBUTOR)**

**Against T-Mobile USA, Inc.**

54. Plaintiff realleges and incorporates paragraphs 1 through 27 as if fully set forth herein.

55. At all material times T-Mobile was engaged in the business of selling and distributing mobile devices, including Samsung Galaxy S21 devices configured for its network, to consumers in Florida.

56. T-Mobile sold the Subject Device to Plaintiff at the DeLand Store or, alternatively, supplied the Subject Device to its authorized dealer for sale to Plaintiff at the DeLand Store, and

in either case placed the Subject Device into the stream of commerce as a commercial seller and distributor in the chain of distribution.

57. The Subject Device was in a defective and unreasonably dangerous condition, as alleged in paragraphs 30 through 31, 37 through 38, and 47 through 50 above, at the time it left T-Mobile's control, and it reached Plaintiff without substantial change in that condition.

58. T-Mobile is strictly liable, without regard to fault, for injuries caused by the defective condition of the product it sold and distributed.

59. The defective condition of the Subject Device was a direct and proximate cause of Plaintiff's injuries.

60. As a direct and proximate result, Plaintiff has suffered in the past, and will suffer in the future, damages that are permanent or continuing in nature, including bodily injury and resulting pain and suffering, disability, disfigurement (including a permanent scar), mental anguish, inconvenience, loss of capacity for the enjoyment of life, and the expense of hospitalization and medical care and treatment.

WHEREFORE, Plaintiff, JENNIFER KRAVCHUCK, demands judgment against Defendant T-MOBILE USA, INC. for compensatory damages, taxable costs, interest as allowed by law, and such other relief as the Court deems just and proper, and demands trial by jury of all issues so triable.

## COUNT V — CONVERSION

### Against Samsung Electronics America, Inc.

61. Plaintiff realleges and incorporates paragraphs 1 through 27 as if fully set forth herein.

62. Plaintiff is the owner of the Subject Device and of the data stored on it, and at all material times has been entitled to its immediate possession.

63. SEA obtained possession of the Subject Device on or about November 22, 2024, for the limited and temporary purpose of evaluating it, and not by sale, transfer, or abandonment

of Plaintiff's ownership. Plaintiff never agreed to transfer title to SEA and expressly declined SEA's offer to purchase the Subject Device in exchange for a release.

64. Plaintiff demanded return of the Subject Device in writing, and SEA refused, or failed and neglected, to return it.

65. By retaining the Subject Device after demand, conditioning its disposition on Plaintiff's release of her claims, and exercising dominion and control over it inconsistent with Plaintiff's ownership, SEA has wrongfully deprived Plaintiff of her property permanently or for an indefinite time.

66. As a direct and proximate result of SEA's conversion, Plaintiff has been damaged in an amount equal to the value of the Subject Device, which SEA itself has valued at not less than $799.99, together with the loss of use of the Subject Device and of the data stored on it, and interest from the date of the conversion.

WHEREFORE, Plaintiff, JENNIFER KRAVCHUCK, demands judgment against Defendant SAMSUNG ELECTRONICS AMERICA, INC. for compensatory damages for conversion, prejudgment interest, taxable costs, and such other relief as the Court deems just and proper, and demands trial by jury of all issues so triable.

**COUNT VI — REPLEVIN (CHAPTER 78, FLORIDA STATUTES)**

**Against Samsung Electronics America, Inc. — Pleaded in the Alternative to Count V**

67. Plaintiff realleges and incorporates paragraphs 1 through 27 as if fully set forth herein.

68. This is an action to recover possession of personal property pursuant to Chapter 78, Florida Statutes. The property is a Samsung Galaxy S21 5G smartphone, Model No. SM-G991U (carrier variant SM-G991UZAATMB), IMEI 350336269138479, Serial No. R5CRC1XZ53Y (the "Subject Device"), together with its original battery and all components and data contained in it.

69. To the best of Plaintiff's knowledge, information, and belief, the value of the property is not less than $799.99, and the property is located at the SEA evaluation facility to

which SEA directed Plaintiff to ship it, 6625 Excellence Way, Plano, Texas 75023, in the custody of SEA or its agents, or at such other location within SEA's control as SEA has not disclosed.

70. Plaintiff is the owner of the property and is entitled to its possession. Plaintiff purchased the property on March 10, 2022, at the DeLand Store, and her ownership is further evidenced by the account and activation records of T-Mobile and by SEA's own correspondence with Plaintiff concerning the property.

71. SEA came into possession of the property when Plaintiff shipped it to SEA on or about November 22, 2024, at SEA's request and for the sole purpose of evaluation. SEA wrongfully detains the property because Plaintiff has demanded its return and SEA has refused to return it, and because SEA has no legal right to retain it.

72. The property has not been taken for a tax, assessment, or fine pursuant to law, and has not been taken under an execution or attachment against the property of Plaintiff.

WHEREFORE, Plaintiff, JENNIFER KRAVCHUCK, demands judgment against Defendant SAMSUNG ELECTRONICS AMERICA, INC. for possession of the property described above or, if possession cannot be had, for the value of the property, together with damages for its wrongful detention, taxable costs, and such other relief as the Court deems just and proper.

## RESERVATION OF RIGHT TO SEEK PUNITIVE DAMAGES

73. Plaintiff does not assert a claim for punitive damages at this time. Plaintiff reserves the right to move for leave to amend to assert such a claim upon a reasonable showing by evidence in the record or proffered by Plaintiff, as required by section 768.72, Florida Statutes.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable as of right.

Dated: September 20, 2026.

Respectfully submitted,

/s/ Awad M. Zitawi Vazquez

________________________________

Awad Zitawi-Vazquez, Esquire

Florida Bar No. 127222
THE PENDAS LAW FIRM
625 E. Colonial Drive
Orlando, Florida 32803
Telephone: (407) 352-3535
Facsimile: (407) 770-6066
Primary email: azvazquez@pendaslaw.com
Secondary email: fdiaz@pendaslaw.com
Tertiary email: pleadings@pendaslaw.com
Counsel for Plaintiff